**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**TABITHA M. PALMER,**

                                        **Plaintiff,**

            v.                                                          **1:20-CV-398**
                                                                       **(FJS/DJS)**

**CORA ITALIAN SPECIALTIES, INC.;**
**CORA IMPORTS, LTD; BOTTENE**
**F.LLI S.N.C., an Italian Business and/or**
**Corporate entity; and ABC CORP., a**
**Fictitious name, true identity unknown,**
**representing any number of businesses and/or**
**corporate entities,**

                                        **Defendants.**

---

**CORA IMPORTS, LTD; and CORA ITALIAN**
**SPECIALTIES, INC.,**

                                        **Third-party Plaintiffs**

            v.

**UNIQUE CATERING OF ALBANY, INC.**
**d/b/a Milano Restaurant,**

                                        **Third-party Defendant.**

---

**APPEARANCES**                              **OF COUNSEL**

**CAPEZZA, HILL LLP**                        **BENJAMIN W. HILL, ESQ.**
30 South Pearl Street
Suite P-110
Albany, New York 12207
Attorneys for Plaintiff

**MARSHALL DENNEHEY WARNER**    **HAROLD L. MOROKNEK, ESQ.**
**COLEMAN & GOGGIN**    **EPHRAIM J. FINK, ESQ.**
287 Bowman Avenue
Suite 404
Purchase, New York 10577
Attorneys for Defendants/Cross-Claimants
and Third-party Plaintiffs Cora Italian
Specialties, Inc. and Cora Imports, Ltd.

**FITZPATRICK & HUNT, PAGANO,**    **JOHN M. SOCOLOW, ESQ.**
**AUBERT, LLP**
1 Landmark Square
21st Floor
Stamford, Connecticut 06901
Attorneys for Defendant and
Cross-Defendant Bottene F.lli S.N.C.

**BAXTER SMITH & SHAPIRO, P.C.**    **ARTHUR J. SMITH, ESQ.**
99 North Broadway    **SIM R. SHAPIRO, ESQ.**
Hicksville, New York 11801

      -  and -

200 Mamaroneck Avenue
Suite 601
White Plains, New York 10601
Attorneys for Third-party Defendant
Unique Catering of Albany, Inc. d/b/a/
Milano Restaurant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff brings this action against Defendants to recover for the personal injuries she

sustained in the course of her work at Milano Restaurant on or about May 19, 2018, while using

a pasta machine that Defendant Bottene F.lli S.N.C. ("Defendant Bottene") manufactured.

Specifically, Plaintiff asserts claims against Defendants sounding in negligence, strict products

liability, and breach of warranties based on Defendants' defective design, manufacture, testing,

assembly, sale, distribution, in section, labeling, maintenance, warning and/or marketing of the pasta machine that caused her serious and permanent injuries.

Pending before the Court are Defendant Bottene's motion to dismiss all claims and causes of action against it for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, *see* Dkt. No. 28, and Plaintiff's cross-motion for jurisdictional discovery, *see* Dkt. No. 35.

## II. DISCUSSION

### A.    Preliminary matter

Together with her opposition to Defendant Bottene's motion to dismiss, Plaintiff filed an amended complaint.  *See* Dkt. No. 35-2, Amended Complaint.  In its reply, Defendant Bottene argued that the Court should not consider the amended complaint because it was untimely.  *See* Dkt. No. 38, Defendant Bottene's Reply Memorandum of Law ("Bottene Reply MOL"), at 6.[1] After receiving the Court's permission to do so, Plaintiff submitted a Sur-reply to respond to this argument.  *See* Dkt. No. 42, Plaintiff's Sur-reply Memorandum of Law ("Plaintiff Sur-reply MOL"), at 2-4.

After considering the parties' arguments, the Court finds that it was reasonable for Plaintiff to conclude that, because the parties had stipulated to a briefing schedule that extended her time to respond to Defendant Bottene's motion, that agreed upon extension encompassed the time in which Plaintiff could file an amended complaint.  Furthermore, it is not unusual for a plaintiff to file an amended complaint in response to a motion to dismiss.  Finally, the equities of

---

[1] All references to page numbers of documents in the record are to the page numbers that the Court's Electronic Filing System generates, which are located in the top right corner of those pages.

the situation favor the Court's consideration of the Amended Complaint, particularly in light of the fact that Plaintiff graciously agreed to Defendant Bottene's request to extend its time to respond to her original complaint even though Defendant Bottene made that request after its time to file a response to that complaint had expired.  Accordingly, for all these reasons, the Court concludes that Plaintiff timely filed her Amended Complaint; and, therefore, it is the extant complaint in this action.

**B.      Defendant Bottene's motion to dismiss Plaintiff's complaint for lack of personal jurisdiction and Plaintiff's cross-motion for jurisdictional discovery**

Defendant Bottene's motion and Plaintiff's cross-motion are inextricably intertwined. Therefore, the Court will address the two motions together.

Plaintiff asserts that this Court has specific personal jurisdiction over Defendant Bottene under both N.Y. C.P.L.R. § 302(a)(1) and § 302(a)(3)(ii).[2]

In pertinent part, New York C.P.L.R. § 302(a) confers specific jurisdiction over a non-domiciliary defendant when one of the following is met:

> (a) Acts which are the basis of jurisdiction.  As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
> * * * * * * * * * *
>
> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
>
> * * * * * * * * * *

---

[2] Plaintiff does not argue that this Court has general jurisdiction over Defendant Bottene under N.Y. C.P.L.R. § 301 or specific jurisdiction over Defendant Bottene under N.Y. C.P.L.R. § 302(a)(2), § 302(a)(3)(i), or § 302(a)(4).  Therefore, the Court will not address these sections of New York's jurisdictional statutes.

(ii) expects or should reasonably expect the act to have
consequences in the state and derives substantial revenue from
interstate or international commerce[.] . . .

N.Y. C.P.L.R. § 302(a)(1), (a)(3)(ii).

"If plaintiffs have at least 'made a sufficient start toward establishing personal
jurisdiction,' '[a] district court may order jurisdictional discovery even where [they have] not
made a *prima facie* showing of jurisdiction.'"  *Bacon v. Fabio Perini S.p.A.*, No. 1:16-CV-1218
(BKS/CFH), 2017 WL 4861489, *10 (N.D.N.Y. July 7, 2017) (quoting *JGB Enters. v. Beta
Fluid Sys.*, 135 F. Supp. 3d 18, 26-27 (N.D.N.Y. 2015) (citing, *inter alia, Texas Int'l Magnetics,
Inc. v. BASF Aktiengesellschaft*, 31 Fed. Appx. 728, 730 (2d Cir. 2002))).  A court "'should take
care to "give the plaintiff ample opportunity to secure and present evidence relevant to the
existence of jurisdiction."'"  *Jerusalem NY Enters. LLC v. Huber Erectors & Hoisting, LLC*, No.
21-CV-376 (MKB), 2021 U.S. Dist. LEXIS 195428, *19 (E.D.N.Y. Oct. 9, 2021) (quoting
*APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) (quoting *Phoenix Consulting v. Republic of
Angola*, 216 F.3d 36, 40, 342 U.S. App. D.C. 145 (D.C. Cir. 2000))).  "The bar for granting
'jurisdictional discovery' is low, . . ., and it is appropriately granted where a plaintiff's allegations
make a 'sufficient start' toward establishing personal jurisdiction, . . ."  *Id.* (internal quotations
omitted).  Furthermore, "'[i]f a plaintiff has identified a genuine issue of jurisdictional fact,
jurisdiction[al] discovery is appropriate even in the absence of a *prima facie* showing as to the
existence of jurisdiction.'"  *Id.* at 20 (quoting *Daventree Ltd. v. Republic of Azer.*, 349 F. Supp.
2d 736, 760 (S.D.N.Y. 2004)); (citing *Tex. Int'l Magnetics, Inc. v. Auriga-Aurex, Inc. (In re
Magnetic Audiotape Antitrust Litig.*)*, 334 F.3d 204, 207-08 (2d Cir. 2003) (per curiam)).

### 1. New York C.P.L.R. § 302(a)(1)

"'To establish personal jurisdiction under [N.Y. C.P.L.R. §] 302(a)(1), two requirements must be met: (1) [t]he defendant must have transacted business within the state; and (2) the claims asserted must arise from that business activity.'" *Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013) (quoting *Sole Resort*, 450 F.3d at 103). "[W]hether a defendant has purposefully availed itself of the New York forum is a fact-intensive inquiry inasmuch as it requires the trial court, in the first instance, to 'closely examine the defendant's contacts for their quality.'" *Id.* (quoting [*Licci III*, 20 N.Y.3d] at 338, 984 N.E.2d at 899-900, 960 N.Y.S.2d at 701-02). However, "the 'arising from' prong of section 302(a)(1) does not require a causal link between the defendant's New York business activity and a plaintiff's injury." *Id.* "Instead, it requires 'a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim.'" *Id.* at 168-69 (quoting [*Licci III*, 20 N.Y.3d] at 339, 984 N.E.2d at 900, 960 N.Y.S.2d at 702); *see also Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (noting that "New York courts have held that a claim 'aris[es] from' a particular transaction when there is 'some articulable nexus between the business transacted and the cause of action sued upon,' *McGowan*, 52 N.Y.2d at 272, 437 N.Y.S.2d 643, 419 N.E.2d 321, or when 'there is a substantial relationship between the transaction and the claim asserted,' *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 522 N.E.2d 40 (1988). A connection that is 'merely coincidental' is insufficient to support jurisdiction." *Johnson v. Ward*, 4 N.Y.3d 516, 520, 797 N.Y.S.2d 33, 829 N.E.2d 1201 (2005)").

Furthermore, "[t]his inquiry is a fact-specific one, and when the connection between the parties' activities in New York and the claim crosses the line from 'substantially related' to 'mere coincidence' is not always self-evident." *Sole Resort*, 450 F.3d at 103. "In fact, '[w]hile there has been much discussion of what amounts to transacting business under section 302(a)(1), there has been little analysis of when a cause of action "arises" out of business so transacted.'" *Id.* (quoting *Fontanetta v. Am. Bd. of Internal Med.*, 421 F.2d 355, 357 (2d Cir. 1970) (footnote omitted))."

A non-domiciliary defendant transacts business when it "'*purposefully avails* [itself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws.'" *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 166 (2d Cir. 2005) (quoting *Cutco Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986) (internal quotation marks and citations omitted) (second and third alterations in the original) (emphasis added)). "Section 302 'is a single-act statute requiring but one transaction -- albeit a purposeful transaction -- to confer jurisdiction in New York.'" *Id.* (quoting *Parke-Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13, 17, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970) (internal quotation marks omitted)); *see also Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010) (stating that New York courts have explained that "section 302 'is a "single act statute" and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted'" (quoting *Kreutter*, 527 N.Y.S.2d 195, 522 N.E.2d at 43) (other citation omitted). However, "where there is a showing that business was transacted, there must be a 'substantial nexus' between the business and the

cause of action." *Grand River Enters.*, 425 F.3d at 166 (citing *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 59-60 (2d Cir. 1985)).

A purposeful availment occurs when a "'non-domiciliary [defendant] "seeks out and initiates contact with New York, solicits business in New York, and establishes a continuing relationship."'" *Richards v. Johnson & Johnson, Inc.*, No. 5:17-cv-00178 (BKS/ATB), 2018 U.S. Dist. LEXIS 152016, *12 (N.D.N.Y. Mar. 30, 2018) (quotation omitted).  Additionally, "[a]t a minimum, the defendant must, on its 'own initiative,' project itself into the state to engage in a 'sustained and substantial transaction of business.'" *Id.* (quotation omitted).

"A claim 'arises from' a particular transaction 'where there is some articulable nexus between the business transacted and the claim sued upon, or when there is a substantial relationship between the transaction and the claim asserted.'" *RVDirect.com v. Worldwide RV*, No. 1:10-CV-0701 (LEK/DRH), 2010 U.S. Dist. LEXIS 135567, *12 (N.D.N.Y. Dec. 21, 2010) (quoting *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (internal citations and quotation marks omitted)).  "Courts must look to 'the totality of circumstances concerning the party's interactions with, and activities within, the state' to determine whether that party has 'transacted business' with the state." *Id.* (quoting *Bank Brussels Lambert*, 171 F.3d at 787).  "Maintaining a website in a distant state that residents of New York visit does not, by itself, subject a defendant to jurisdiction under N.Y. C.P.L.R. § 302." *Id.* (citing *Bensusan Rest. Corp. v. King*, 126 F.3d 25 (2d Cir. 1997)).  In *RVDirect.com*, the court explained that, in *Hsin Ten Enter. USA, Inc. v. Clark Enter.*, 138 F. Supp. 2d 449, 456 (S.D.N.Y. 2000),

> the court considered the degree to which a website's interactivity
> impacts the exercise of jurisdiction under § 302(a)(1).  It noted
> that, in this circuit, "passive websites," i.e., those that primarily
> make information available to viewers but do not allow for the

> exchange of information, are insufficient to confer personal
> jurisdiction; "active websites," through which a defendant clearly
> does business over the internet, for example, through knowingly
> and repeatedly transmitting computer files across state lines, do
> confer personal jurisdiction; in the middle of this spectrum,
> "interactive websites," those permitting the exchange of
> information between viewers and a defendant, generally allow for
> the exercise of jurisdiction.

*Id.* at \*13-\*14 (quoting *Hsin*, 138 F. Supp. 2d at 456 (citations omitted)).

The court noted, however, "that the level of activity a defendant's website employs does not singularly control the jurisdictional analysis." *Id.* at \*14 (citing *Best Van Lines, Inc. v. Walker*, 490 F.3d 239 (2d Cir. 2007) ("a website's interactivity may be useful for analyzing personal jurisdiction under section 302(a)(1), but only insofar as it helps to decide whether the defendant transacts any business in New York -- that is, whether the defendant, through the website, purposefully availed himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws.") (quotation marks, citations, and alterations omitted)) (other citation omitted).  Likewise, the court in *Chloe* noted "that it is not the interactive website itself, but sales or other contacts made through such a website, that are significant for jurisdictional purposes." *Chloe*, 571 F. Supp. 2d at 529 (citations omitted). Finally, the court in *RVDirect.com* agreed "with the *Chloe* court and others' conclusion that § 302 requires 'some additional evidence of a defendant's "purposeful availment" of the forum beyond that defendant's maintenance of an interactive commercial website, even when the website permits consumers to place orders online.'" *RVDirect.com*, 2010 U.S. Dist. LEXIS 135567, at \*15 (quoting [*Chloe*, 571 F. Supp. 2d at 529] (citing *Best Van Lines*, 490 F.3d at 252)).

At this time, the parties have not engaged in discovery.  However, Plaintiff has made a sufficient start toward establishing personal jurisdiction over Defendant Bottene under C.P.L.R. § 302(a)(1).  First, Plaintiff has raised an issue of fact regarding the question of whether

Defendant Bottene has transacted business in the state of New York that has some relationship to her claims.  In this regard, although the parties do not dispute that Defendant Bottene shipped replacement parts for its pasta making machines to Northeast Commercial Appliance Service, Inc. ("Northeast") in Latham, New York, they do dispute the reason that Defendant Bottene did so.  Defendant Bottene asserts that it did so only at the request of Defendants Cora Italian Specialties, Inc. and Cora Imports, Ltd. ("Defendant Cora").  Plaintiff, however, argues that Defendant Bottene "on multiple occasions, directly supplied its products to end-users in New York, and specifically in Albany County."  *See* Dkt. No 35 at 9 (citations omitted).  To support her position, Plaintiff relies on the affidavit of Defendant Cora's Service and Parts Manager, Victor Giampaolo, in which he stated that, "based on [his] review of [Defendant Cora's] business records, [Defendant] Cora has invoiced Northeast . . . more than 20 times for Defendant . . . Bottene['s] replacement parts.  Upon further review of these records, some of the Bottene replacement parts within these orders were drop shipped directly from [Defendant] Bottene to Northeast['s] . . . location in Latham, New York."  *See* Dkt. No. 34-1, Giampaolo Affidavit, at ¶ 2.  Furthermore, he points to "attached Invoice (#138820) from July 15, 2019 wherein Northeast . . . purchased parts for a Bottene PM96 (the subject make and model of pasta maker in the case)."  *See id.* at ¶ 4.  Plaintiff argues that this evidence demonstrates that Defendant Bottene "both 'transacts business' in New York by shipping parts directly, and the sale and shipment of those parts led directly to Plaintiff's injuries."  *See* Dkt. No. 35 at 9.

Most, if not all, of the information needed to resolve these factual issues is in the hands of Defendant Bottene; and, at this stage of the litigation, it would be patently unfair if the Court did not provide Plaintiff with an "'"opportunity to secure and present evidence relevant to the existence of jurisdiction."'"  *Jerusalem NY Enters. LLC*, 2021 U.S. Dist. LEXIS 195428, at *19

(quotation omitted).  Moreover, resolution of these factual issues is central to the Court's

determination of whether it has jurisdiction over Defendant Bottene under § 302(a)(1).

Accordingly, the Court grants Plaintiff's cross-motion for jurisdictional discovery on her claim

that the Court has jurisdiction over Defendant Bottene pursuant to § 302(a)(1) and denies

Defendant Bottene's motion to dismiss Plaintiff's complaint for lack of personal jurisdiction

without prejudice and with leave to renew once the parties have completed jurisdictional

discovery.


### 2. N.Y. C.P.L.R. § 302(a)(3)(ii)

To establish specific jurisdiction over a non-domiciliary defendant under N.Y. C.P.L.R.

§ 302(a)(3)(ii), five elements must be met:

> "(1) the defendant's tortious act was committed outside New York,
> (2) the cause of action arose from that act, (3) the tortious act
> caused an injury to a person or property in New York, (4) the
> defendant expected or should reasonably have expected that his or
> her action would have consequences in New York, and (5) the
> defendant derives substantial revenue from interstate or
> international commerce."

*Jerusalem NY Enters. LLC v. Huber Erectors & Hoisting, LLC*, No. 21-CV-376 (MKB), 2021
U.S. Dist. LEXIS 195428, *13 (E.D.N.Y. Oct. 9, 2021) (quoting *Penguin Grp. (USA) Inc. [v.
Am. Buddha*, 609 F.3d 30,] 35 [(2d Cir. 2010)]).

To satisfy the first element, the plaintiff does not need to prove that the defendant

committed a tort; instead, the plaintiff only needs to state a colorable cause of action.  *See Sole

Resort*, 450 F.3d at 106.  Furthermore, "'[t]he test of whether a defendant expects or should

reasonably expect his act to have consequences within the State is an objective rather than

subjective one.'"  *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 241 (2d Cir. 1999) (quoting *Allen

v. Auto Specialties Mfg. Co.*, 45 A.D.2d 331, 357 N.Y.S.2d 547, 550 (3d Dep't 1974)).

The mere "likelihood or foreseeability 'that a defendant's product will find its way into New York does not satisfy this element, and that purposeful availment of the benefits of the laws of New York such that the defendant may reasonably anticipate being haled into New York is required.'" *Id.* (quotation and other citations omitted). "Moreover, it is not enough that a defendant foresaw the possibility that its product would find its way here; foreseeability must be coupled with evidence of a purposeful New York affiliation, for example, a discernible effort to directly or indirectly serve the New York market." *Schaadt v. T.W. Kutter, Inc.*, 169 A.D.2d 969, 970 (3d Dep't 1991) (citations omitted). "In the case of a manufacturer, the 'purposeful availment' standard is met by a 'discernible effort to serve, directly or indirectly, a market in the forum state.'" *Stephan v. Babysport, LLC*, 499 F. Supp. 2d 279, 289 (E.D.N.Y. 2007) (quoting *Darienzo v. Wise Shoe Stores, Inc.*, 74 A.D.2d 342, 346, 427 N.Y.S.2d 831, 834 (2d Dep't 1980)). "Evidence that a defendant manufacturer knew or reasonably should have known the ultimate destination of its product is essential for a finding of jurisdiction under Section 302(a)(3)(ii)." *Id.* (citing *Martinez*, 91 A.D.2d at 653, 457 N.Y.S.2d at 99). Additionally, "New York State and Federal cases have decided whether the reasonable expectation requirement is sufficiently alleged where, as here, there is a sale to a foreign distributor that makes the independent decision to re-sell the product in New York. In those cases, person[al] jurisdiction is sustained only where it can be shown that when the named defendant made the out of state sale, it sought a 'purposeful affiliation' with the State of New York." *Id.* at 290 (citing *Tri-Coastal*, 2006 WL 1167864, *5-7 (discussing cases)). "In interpreting the 'reasonable expectation' requirement, New York courts 'have focused on whether there were concrete facts known to the nondomiciliary that should have alerted it that its product would enter the New York market.'" *Albino v. Glob. Equip. USA, Ltd.*, No. 6:14-cv-06519 (MAT), 2016 U.S. Dist.

LEXIS 109981, *9 (W.D.N.Y. Aug. 18, 2016) (quoting *Am. Network, Inc. v. Access Am./Connect Atlanta, Inc.*, 975 F. Supp. 494, 497 (S.D.N.Y. 1997) (citing *Darienzo v. Wise Shoe Stores, Inc.*, 74 A.D.2d 342, 427 N.Y.S.2d 831, 833 (2d Dep't 1980) (nondomiciliary shoe manufacturer should have expected New York consequences from its manufacture of shoes because it was aware that a Tennessee distributor to which its shoes were shipped would distribute them to New York retailers); (other citation omitted)).

The substantial revenue requirement is intended to "'narrow[] the long-arm reach to preclude the exercise of jurisdiction over non-domiciliaries who might cause direct, foreseeable injury within the State, but whose business operations are of a local character.'" *Glenn H. Curtiss Museum v. Confederate Motors, Inc.*, No. 20-CV-6237 (CJS), 2021 U.S. Dist. LEXIS 26644, *15 (W.D.N.Y. Feb. 11, 2021) (quoting [*Ingraham v. Carroll*, 90 N.Y.2d 592, 599 (N.Y. 1997)] (internal quotation and citation omitted)). "[T]his requirement is a 'bigness requirement,' designed to ensure that the defendant is 'economically big enough to defend suit in New York.'" *Id.* (quoting *Bassili v. Chu*, 242 F. Supp. 2d 223, 230 (W.D.N.Y. 2002) (quoting Siegel, *New York Practice*, § 88 at 136 (2d ed))). Even when a plaintiff's complaint does not include any specific allegations regarding a defendant's revenue, "'dismissal for lack of personal jurisdiction is inappropriate under 302(a)(3)(ii), even where there is no proof that a defendant derives substantial revenue from interstate or international commerce, where that knowledge is peculiarly under the control of [the defendant], and may come to light in the course of [s]ubsequent discovery.'" *Related Cos., L.P. v. Ruthling*, No. 17-cv-4175, 2017 U.S. Dist. LEXIS 207857, *15 (S.D.N.Y. Dec. 15, 2017) (quoting *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 468 (S.D.N.Y. 2008) (internal quotation omitted)). Although there is no bright-line rule "regarding the amount of which a [defendant's] revenue becomes 'substantial'

for purposes of Section 302(a)(3)(ii), courts generally will assess either (1) the percentage of a party's overall revenue derived from interstate commerce, or (2) the absolute revenue generated by a defendant's interstate commerce activities." *Deitrick v. Gypsy Guitar Corp.*, No. 16 Civ. 616 (ER), 2016 U.S. Dist. LEXIS 179481, *18-*19 (S.D.N.Y. Dec. 28, 2016) (citing *Light v. Taylor*, No. 05 Civ. 5003 (WHP), 2007 U.S. Dist. LEXIS 5855, 2007 WL 274798, at *4 (S.D.N.Y. Jan. 29, 2007)).

In this case, the Court finds that Plaintiff has made a sufficient start toward establishing personal jurisdiction over Defendant Bottene under N.Y. C.P.L.R. § 302(a)(3)(ii). First, there is no dispute that Defendant Bottene designed and manufactured pasta makers and replacement parts for those pasta makers in Italy. Thus, if as Plaintiff alleges, the design and/or manufacture of the subject pasta maker or the replacements parts that were used to service that pasta maker were faulty, that would be sufficient to find that Defendant Bottene committed a tortious act, *i.e.*, faulty manufacture/design of the pasta machine and/or its replacement parts, outside New York. Second, Plaintiff's claims of negligence, strict products liability, and breach of warranty stem from Defendants "defective design, manufacture, testing, assembly, sale, distribution, inspection, labeling, maintenance, warning, and/or marketing of the Pasta Machine that caused Plaintiff serious and permanent injuries on or about May 19, 2018." *See* Amended Complaint at ¶ 1. Third, there is no dispute that Plaintiff sustained her personal injuries while making pasta in the course of her employment with Milano Restaurant, located in New York, using a pasta machine that Defendant Bottene manufactured. *See id.* at ¶¶ 26-27.

Furthermore, with regard to the issue of whether Defendant Bottene should have reasonably expected its tortious act to have consequences in New York, Defendant Bottene argues that the focus of the court's analysis should be on the pasta machine and not on the few

replacement parts that may have occasionally reached New York.  *See* Bottene Reply MOL at

17.  Looking solely at the subject pasta machine, Defendant argues that, because it sold the pasta

machine to Defendant Cora, an Illinois-based independent distributor, *ex works* Italy,[3] it could

not have availed itself of doing business in New York because Defendant Cora was free to sell

that pasta machine to whomever and wherever it pleased.

Rather than looking at a single incident or sale, which is Defendant Bottene's focus, the

Court must look at the totality of Defendant Bottene's contacts with New York, including the

shipment of replacement parts directly to Northeast located in Latham, New York.  Mr.

Giampaolo, who is Defendant Cora's Service and Parts Manager, stated in his affidavit that

Defendant Cora had invoiced Northeast, which is located in Latham, New York, more than

twenty times for Defendant Bottene's replacement parts.  *See* Dkt. No. 34-1, Giampaolo

Affidavit, at ¶ 2.  In addition, he stated that some of those replacement parts were drop shipped

directly from Defendant Bottene to Northeast.  *See id.*  Attached to Mr. Giampaolo's affidavit is a

purchase order, four invoices for replacement parts that Defendant Bottene shipped directly to

Northeast, and an email from Defendant Bottene providing Defendant Cora with tracking

information for its order that was shipped via FedEx.  *See id.* at ¶¶ 2-4.  Plaintiff argues that

these emails and invoices show that the replacement parts were not shipped *ex works*; instead,

Defendant Bottene shipped them via FedEx directly to Northeast.  *See* Dkt. No. 35-1,

Declaration of Benjamin Hill ("Hill Decl."), at ¶ 9.  In her Reply Declaration, Ms. Bottene states

---

[3] In her Declaration, Ms. Bottene explains that Defendant Bottene's "*ex works* shipment
obligation was merely to deliver the Subject Pasta Machine to [Defendant] Cora at [Defendant
Bottene's factory in Italy.  At that point, possession of and title to the Subject Pasta Machine
passed to [Defendant] Cora, and [Defendant] Cora then became responsible for shipment of the
Subject Pasta Machine from Italy to its destination in Illinois."  *See* Dkt. No. 28-2, Bottene
Declaration ("Bottene Decl."), at 3-4.

that there were four occasions in 2016 and one in 2018 where Defendant Cora ordered replacement parts from Defendant Bottene, and Defendant Bottene shipped those replacement parts directly to Northeast. *See* Dkt. No. 39, Bottene Reply Declaration ("Bottene Reply Decl."), at ¶ 5. On each of those occasions, Ms. Bottene states, Defendant Bottene made such shipments solely at Defendant Cora's request, presumably to reduce shipping expenses and/or the amount of time it would take these parts to reach Northeast. *See id.* Thus, Defendant Bottene asserts that, because it was simply accommodating Defendant Cora's request, Defendant Bottene did not intend to purposefully avail itself of the protection of New York law. *See id.* at ¶¶ 5-6.

With regard to the final element, which requires the Court to determine whether Defendant Bottene derives substantial revenue from interstate or international commerce, Ms. Bottene states in her Reply Declaration, that between 2015 and 2018, Defendant Bottene sold products with a total value of approximately $10,408.18 to Taste-Film, its independent distributor in New York. *See* Bottene Reply Decl. at ¶ 20.[4] When performing the substantial revenue analysis, the Court must look at the total revenue Defendant Bottene derives from international commerce, not only the revenue it derives from the State of New York. As Plaintiff's counsel points out in his Declaration, Defendant Bottene has not made any representations about the revenue it derived in the years prior to or subsequent to the 2016-2018 period; and the figures it does provide do not include the revenue it derived from products it directly shipped to New York in drop sales, *i.e.,* the products it sent directly to Northeast. *See* Dkt. No. 35-1, Hill Decl., at ¶ 21. Nor do Defendant Bottene's submissions include the revenue that it derived from international sales.

---

[4] In her initial declaration, Ms. Bottene stated that Defendant Bottene had only sold $6,333.00 worth of products to an independent distributor located in new York, which accounted for .0036% of its total sales during those years. *See* Dkt. No. 28-2, Bottene Decl., at ¶ 21.

Furthermore, in his Declaration, Plaintiff's counsel included a screenshot from Defendant Bottene's website, which states as follows: "'An important watershed was the 1970s when our first exports gained us an international reputation.  With huge number of Italians living abroad, our first clients were the sons and daughter of Italian immigrants -- above all in the restaurant sector -- wanting to get people acquainted with the culture and traditions of their fathers via the culinary arts too.'"  *See id.* at ¶ 20 (quoting www.bottene.net).  Plaintiff's counsel asserts that this statement is evidence that Defendant Bottene touts its popularity among Italian restauranters living abroad.  *See id.*  Additionally, Plaintiff's counsel states that "[D]efendant Bottene's] own website touts its 'international market while offering translations of the website in Italian, French, Spanish, and German."  *See id.* at ¶ 23.

On the other hand, Defendant Bottene argues that "the Court need not determine whether [it] derives substantial revenue from interstate or foreign commerce . . . [t]o the extent that [it] has the burden to set forth information regarding its revenue related to the sale of [its] products to its independent distributor in New York, it already has done so. . . ."  *See* Bottene Reply MOL at 19.  Defendant Bottene's statement is not helpful because, as noted, for the purposes of C.P.L.R. § 302(a)(3)(ii), "courts generally will assess either (1) the percentage of a party's overall revenue derived from interstate [or international] commerce, or (2) the absolute revenue generated by a defendant's interstate [or international] commerce activities."  *Deitrick*, 2016 U.S. Dist. LEXIS 179481, at *18-*19.  Since Defendant Bottene did not provide any data regarding the revenue it derives from international commerce, the Court cannot determine if Defendant Bottene "derives substantial revenue from interstate or **international** commerce."  N.Y. C.P.L.R. § 302(a)(3)(ii) (emphasis added).

For all these reasons, the Court concludes that Plaintiff has made a substantial start toward demonstrating that the Court has personal jurisdiction over Defendant Bottene under C.P.L.R. § 302(a)(3)(ii).  Moreover, many of the facts that Plaintiff needs to support her position are in the hands of Defendant Bottene, *e.g.*, the revenue that Defendant Bottene derives from international commerce and the extent of the contacts that Defendant Bottene has with New York, through its distributors or otherwise.  Therefore, the Court grants Plaintiff's cross-motion for jurisdictional discovery with regard to the factors needed to support personal jurisdiction over Defendant Bottene under C.P.L.R. § 302(a)(3)(ii) and denies Defendant Bottene's motion to dismiss Plaintiff's complaint for lack of personal jurisdiction without prejudice and with leave to renew once the parties have completed jurisdictional discovery.

### III. CONCLUSION

Having reviewed the entire file in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant Bottene's motion to dismiss Plaintiff's complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure*, see* Dkt. No. 28, is **DENIED without prejudice and with leave to renew** once the parties have completed jurisdictional discovery; and the Court further

**ORDERS** that Plaintiff's motion for jurisdictional discovery, *see* Dkt. No. 35, is **GRANTED**; and the Court further

**ORDERS** that this matter is referred to Magistrate Judge Stewart for all further pretrial matters; and the Court further

**ORDERS** that the Clerk of the Court shall file Plaintiff's Amended Complaint, *see* Dkt.

No. 35-2, as a separate document on the Docket.

**IT IS SO ORDERED.**

Dated: March 7, 2022
       Syracuse, New York

                                                                               
Frederick J. Scullin, Jr.
Senior United States District Judge